**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

---

Tyewand Smith,
Petitioner,

vs. Case No. 1:08cv599
(Dlott, C.J.; Black, M.J.)

Warden, London Correctional Institution,
Respondent.

---

# REPORT AND RECOMMENDATION

---

Petitioner, an inmate in state custody at the London Correctional Institution in London, Ohio, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 1), respondent's return of writ with exhibits (Doc. 11), petitioner's "traverse" in reply to the return of writ (Doc. 12), as well as supplemental pleadings filed pursuant to Orders issued on October 27 and November 23, 2009 (Docs. 14, 15, 17, 18; *see also* Docs. 13, 16).[1]

## Procedural Background

On November 28, 2005, the Hamilton County, Ohio, grand jury indicted petitioner on the following charges: one count of possession of heroin "in an amount that equaled or exceeded 50 grams but less than 250 grams," a first-degree felony, in violation of Ohio Rev. Code § 2925.11(A) (Count One); one count of possession of heroin "in an amount that equaled or exceeded 2500 unit doses," a first-degree felony, in violation of Ohio Rev. Code § 2925.11(A), with a Major

---

[1] By separate Order issued this date, petitioner's motion for leave to file a supplemental "traverse" responding to respondent's supplemental return of writ has been granted. (*See* Doc. 18).

Drug Offender (MDO) specification (Count Two); one count of having weapons while under disability, a third-degree felony, in violation of Ohio Rev. Code § 2923.13(A)(3) (Count Three); and one count of carrying a concealed weapon, a fourth-degree felony, in violation of Ohio Rev. Code § 2923.12(A) (Count Four). (Doc. 11, Ex. 1).[2] The indictment alleged that each of the charged criminal offenses occurred "on or about" November 17, 2005. (*Id.*).

Thereafter, pursuant to the defendant's request, the State filed a bill of particulars, which further provided:

> In addition to the allegations set forth within the Indictment, the State further asserts that on November 17, 2005 at approximately 7:53 p.m. in the area of Ross Avenue near Warsaw, Defendants possessed 659 bindles of heroin weighing 10.38 grams. Defendant Tyewand Smith also had a .40 caliber Springfield Armory XP40 semi-automatic firearm and ammunition at this time.
>
> On November 17, 2005, at approximately 8:30 [p.]m., police executed a search warrant at 805 Pedretti Avenue, and recovered 61 bundles of heroin containing 50 bindles each (total of 3050 bindles), which weighed 99.62 grams, belonging to Defendants.

(*Id.,* Ex. 2).

On November 6, 2006, petitioner entered a plea of no contest to all four charges and the MDO specification. (*Id.,* Ex. 3). At the plea hearing, before the plea of no contest was accepted by the court, the prosecutor relayed the substance of each charge and the following statement of "underlying facts:"

> ...[T]his was a situation wherein the defendant was pulled over and arrested in an automobile which contained heroin tested by the Hamilton County Coroner's Lab, and there was also a search warrant that was executed at the residence of the defendant at that time and specifically they found an additional amount of heroin.
>
> For the purpose of the no contest plea, the heroin tested positive in the

[2] A co-defendant also was charged with the heroin possession offenses charged in Counts One and Two, including the MDO specification. (Doc. 11, Ex. 1).

automobile as being heroin in an amount of 95 unit doses.

> There was also a .40 caliber handgun that was loaded and this was located in the console of the vehicle ready at hand obviously but concealed at the time.
>
> As to the heroin located in the residence ..., there were over 3000 unit doses of heroin clearly in excess of 2500 unit doses which are the basis of the MDO specification.
>
> I would note for the record that the coroner's lab tested all of those and tested the heroin as being heroin and tested in excess of 2500 unit doses, specifically 2,515 unit doses to make it in excess of the 2500 required by the major drug offender.

(*Id.*, Ex. 16, November 6 Plea Hearing Tr. 2-5). At that juncture in the prosecutor's recitation of the facts, defense counsel interceded, stating: "Waive further reading. Stipulate to those facts and nothing to add." (*Id.*, Tr. 5).

The colloquy continued in pertinent part as follows:

> THE COURT: Very well, Mr. Smith, you're making these pleas of your own free will; is that correct?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: No one made any threats, promises or anything else in order to get you to plead, have they?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: All right. Now let's start off here. Count 1 is a felony of the first degree which means I could sentence you to 3, 4, 5, 6, 7, 8, 9 up to 10 years in prison....
>
> Now Count 2 is also a felony of the first degree which means – well, because of the particular offense involved here is a mandatory 10 years in prison.

> With reference to Count 2, there is also a major drug specification which means you face up to 10 years more in prison which could run consecutively or if the Court imposed that which would run consecutive to the 10 years.
>
> Count 3 is a felony of the third degree which means I could sentence you to 1, 2, 3, 4 up to 5 years in prison....
>
> Count 4 is a felony of the fourth degree which means I could sentence you to 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17 up to 18 months in prison....
>
> Now the sentences on these particular counts could run concurrently, that means at the same time. Or consecutively, that is one after the other as I see fit.
>
> ****
>
> As I previously told you with reference to the major drug offender, you also face up to 10 years or more in prison besides the other penalties which I have also advised you of.
>
> In addition, your prison time on Counts 1 and 2 are mandatory meaning no judicial release is possible.
>
> ....Do you understand the possible penalties here?
>
> THE DEFENDANT: Yes, sir.

(*Id.*, Tr. 5-8).

On further questioning by the court, petitioner affirmed that he could read and that he had read, understood and signed the written plea entry of his own free will. (*Id.*, Tr. 9). He also affirmed that he understood by pleading no contest that he was "not technically admit[ting his] guilt, but [was] admit[ting] that the facts described in the indictment are true." (*Id.*, Tr. 9-10). Petitioner affirmed further that he understood that by pleading no contest he was waiving his rights to a jury trial where he would not be compelled to testify and the State was required to prove its case against him beyond a reasonable doubt; to confront the witnesses

against him; and to subpoena witnesses in his favor. (*Id.*, Tr. 10). Before accepting the no contest plea and finding petitioner guilty of the criminal charges, the court further ensured that petitioner was "not under the influence of drugs or alcohol now." (*Id.*, Tr. 11).

The written plea entry referred to at the plea hearing, which was executed by petitioner and counsel, also set forth the potential sentence range for each offense, and that a ten-year prison term was mandatory on Count Two. (*See id.*, Ex. 3). The plea entry further provided that petitioner understood "the nature of the charge(s) to which I plead no contest," the "maximum penalty as set out above, and any mandatory prison term during which I am NOT eligible for judicial release." (*Id.*).

On November 28, 2006, petitioner was sentenced to terms of imprisonment totaling ten (10) years, which consisted of the following concurrent prison terms: a mandatory ten-year prison term for the heroin possession offense with MDO specification charged in Count Two; a three-year prison term for the heroin possession offense charged in Count One; and a one-year prison term for each weapons offense charged in Counts Three and Four. (*Id.*, Ex. 4).[3]

With the assistance of new counsel, petitioner timely appealed to the Ohio Court of Appeals, First Appellate District. Petitioner's appellate attorney filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), wherein he stated that he could not find "anything in the record that might arguably support the appeal" and further stated: "In nineteen years of criminal appellate practice, in appeals of pleas and trials alike, counsel has, with few exceptions, always found some arguable issue. He finds none in this case." (*Id.*, Ex. 5, p. 3).

In the brief, counsel requested permission to withdraw from the case; he also requested that the court "examine the record for any possible issues" and relayed the following "points" that petitioner had chosen to raise on appeal:

1. Smith's sentence violates the holdings of *Blakely v. Washington*[,

---

[3] At the sentencing hearing, one of the prosecuting attorneys pointed out that "this case has been on the Court's docket for almost a year" and that there had been numerous pretrial conferences and discussions about sentencing during that time period. (Doc. 11, Ex. 16, November 28 Sentencing Hearing Tr. 19). The attorney further stated: "There were some pretrial discussions about what the Court's inclination was as far as a sentence in this matter. For that reason the defendant pled to all the counts." (*Id.*).

542 U.S. 296 (2004),] and *State v. Foster*[, 845 N.E.2d 470 (Ohio 2006)].

2. The *Foster* case is not retroactive.

3. There was ineffective assistance of counsel because:

a) Counsel told Smith he would receive less prison time than he did.

b) Counsel did not object to the "weights involved and errors in the indictment."

4. Smith's conviction violated the Speedy Trial Act.

5. There were inconsistencies between the indictment and the bill of particulars.

6. The indictment did not mention an arrest warrant.

7. There was no probable cause to search both Smith's automobile and home.

8. The search of the house occurred nearly 45 minutes after the search of the automobile.

9. The court made no sentencing findings.

10. Smith received more time than his co-defendant.

(*Id.*, pp. 3-5).

Subsequently, petitioner filed a *pro se* supplement to counsel's *Anders* brief, raising the following assignments of error:

1. The trial court erred in sentencing appellant to a sentence inconsistent with sentences imposed for similar crimes by similar

offenders.

2. The trial court erred in finding Appellant guilty of Possession of Drugs with a major drug offender specification.

3. The trial court erred by finding appellant guilty of charges which violated his Fourteenth Amendment to the U.S. Constitution right to equal protection of the law.

4. Appellant was denied effective assistance of counsel in vio[la]tion of his rights under Amendment Six of the U.S. Constitution.

5. The trial court erred by denying appellant his right to a jury trial, ... by making a judicial finding that he was a major drug offender.

(*Id.*, Ex. 8).

On November 21, 2007, the Ohio Court of Appeals affirmed the trial court's judgment and overruled counsel's motion to withdraw. (*Id.*, Ex. 9). The court stated: "After reviewing the entire record, we are satisfied that counsel has provided his client with a diligent and thorough search of the record and that he has correctly concluded that the proceedings below were free from prejudicial error. *We have also considered Smith's claims and reject them*." (*Id.*, p. 2) (emphasis added) (footnote omitted).

On January 25, 2008, petitioner filed a *pro se* motion for leave to file a delayed appeal to the Supreme Court of Ohio, which was granted. (*Id.*, Exs. 10-11). In his memorandum in support of jurisdiction, which was later amended, petitioner asserted three propositions of law:

1. Appellate counsel violated appellant's Sixth and Fourteenth Amendment right to due process and equal protection of law when appellate counsel filed an "*Anders* Brief" denying appellant of effective and meaningful appellate review by not diligently searching the entire record for any arguably meritorious issues in support of his client's appeal, and therefore violated the United States Supreme Court decision in *Anders*....

> 2. Appellate counsel denied appellant an effective and meaningful review on appeal by failing to challenge the validity of conviction and sentence of appellant when same is contrary to law and clearly against the manifest[] weight of the ... evidence when counsel filed an *Anders* brief denying appellant an effective review on appeal.
>
> 3. Appellate counsel denied appellant an effective meaningful review on appeal by failing to raise ineffective assistance of counsel where counsel failed to challenge the sufficiency and correctness of the indictment where evidence demonstrate[s] that Count One was defective and did not prove each and every element of the offense as well as Count Two, and filing an *Anders* brief denied appellant his appeal rights to raise such ineffectiveness of trial counsel.

(*Id.*, Exs. 12, 13).

On July 9, 2008, the Supreme Court of Ohio denied petitioner leave to appeal and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 15).

Petitioner next commenced the instant federal habeas corpus action. In his petition, petitioner alleges as grounds for relief the same three claims that he presented on appeal to the Supreme Court of Ohio. (Doc. 1, pp. 5, 10, 12).

In the return of writ, respondent contends that petitioner has waived his claims for relief, because he failed to properly raise them in a timely application for reopening of the appeal under Ohio R. App. P. 26(B). (Doc. 11, Brief, pp. 8-11). Respondent also argues that the third ground for relief is waived, because petitioner did not present the underlying "defective indictment claim" as a federal constitutional issue to the state courts. (*Id.,* pp. 11-12). Finally, respondent asserts that the petition is subject to dismissal on the grounds that (1) petitioner's ineffective assistance of appellate counsel claims lack merit; and (2) "[a]ny error in the performance of appellate counsel is harmless" given that petitioner, who was permitted to represent himself on appeal without any restriction on "his access to the appellate forums," was not denied meaningful appellate review. (*See id.,* pp. 13-24).

## OPINION

### Petitioner Is Not Entitled To Habeas Relief Based On The Ineffective

**Assistance Of Appellate Counsel Claims Alleged In The Petition**

In his three grounds for relief, petitioner generally claims that he was denied the effective assistance of appellate counsel and meaningful appellate review as a result of his appellate counsel's decision to file an *Anders* brief. (*See* Doc. 1). More specifically, petitioner contends in Grounds One and Two of the petition that his appellate counsel should have asserted a claim on direct appeal challenging the validity of the indictment and the factual bases for his no contest plea because (1) he was improperly charged with a first-degree-felony offense in Count One although "the records and transcripts clearly demonstrate[] that ... [he] was arrested with 10.38 grams of heroin," which would only support a charge of a "felony of the second degree;" and (2) Count Two contained a "structural defect" to the extent that the evidence "clearly shows that Petitioner['s] residence contained 61 bundles of heroin which weighed 99.62 grams," an amount that fails to satisfy "the elements of a major drug offender" as charged in Count Two. (*See id.*, pp. 8, 10-12). Petitioner also alleges in Grounds One and Three that his appellate counsel should have asserted a claim on direct appeal challenging the effectiveness of petitioner's trial counsel, who "worked diligently to convince petitioner" to enter a guilty plea rather than file a suppression motion attacking the sufficiency of the indictment. (*See id.*, pp. 7-8, 13-14).

Petitioner, proceeding on his own, raised the underlying claims challenging his trial counsel's performance and his conviction on the second major drug offender count on direct appeal to the Ohio Court of Appeals. (*See* Doc. 11, Ex. 5, p. 3; Ex. 8). Moreover, in his *pro se* memorandum in support of jurisdiction on further appeal to the Supreme Court of Ohio, petitioner presented the same claims and supporting arguments attacking his appellate counsel's decision to file an *Anders* brief that are asserted in the instant petition for habeas corpus relief. (*See id.*, Ex. 12). Therefore, contrary to respondent's contention in the return of writ, it appears that petitioner has not waived the claims for relief that are specified in his

habeas corpus petition.[4]

The proper standard for assessing the merits of petitioner's stated claims stemming from his appellate counsel's decision to file an *Anders* brief was enunciated by the Supreme Court in *Strickland v. Washington,* 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (citing *Smith v. Murray*, 477 U.S. 527, 535-36 (1986)). Under the *Strickland* standard, petitioner must demonstrate both that (1) his appellate counsel was "objectively unreasonable ... in failing to find arguable issues to appeal–that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them;" and (2) a reasonable probability exists that "but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal." *See id.* at 285-86. To establish a claim of ineffective assistance under the first prong of the *Strickland* test, petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690.

Both in the state appeal proceedings and in the instant petition, petitioner has identified essentially two acts or omissions amounting to ineffectiveness by his appellate counsel in failing to find arguable issues to appeal. First, petitioner alleges that his appellate counsel unreasonably failed to assert an assignment of error challenging the validity of the charge contained in Count Two of the

---

4 It is further noted that even assuming as respondent has argued that petitioner's underlying "defective indictment claim" was not presented as a federal constitutional claim to the state courts, his ineffective assistance of appellate counsel claims were. In addition, although the appropriate avenue for bringing an ineffective assistance of appellate counsel claim is by way of an application for reopening of the appeal under Ohio R. App. P. 26(B), at the time petitioner filed his *pro se* memorandum in support of jurisdiction in April 2008, *such* claims also could be raised directly to the Supreme Court of Ohio on appeal from the intermediate appellate court's direct appeal decision. *Cf. Thompson v. Warden, Belmont Corr. Instit.,* __ F.3d __, Nos. 08-3743/3744, 2010 WL 957749, at *3 (6th Cir. Mar. 18, 2010) (to be published) (and cases cited therein) (stating that because under Ohio law, parties were permitted "to raise ineffective-assistance-of-appellate-counsel claims for the first time via a motion for leave to appeal to the Ohio Supreme Court, ... a claim raised in that manner may be 'fairly presented' for federal habeas purposes."). Indeed, it was not until September 2008 that the Supreme Court of Ohio made it clear in *State v. Davis,* 894 N.E.2d 1221 (Ohio 2008), that a timely filed application for reopening of an appeal under Ohio R. App. 26(B) is subject to substantive consideration and may not be deemed barred from review by *res judicata* on the ground that the appellant could have raised the ineffective assistance of appellate counsel claims to the state supreme court in the direct review proceedings.

indictment and attached MDO specification, as well as trial counsel's corresponding failure to object to the "structural defect" contained in Count Two. Specifically, petitioner contends an objection should have been raised because the amount of heroin found in his possession was insufficient to warrant the major drug offender charge. (*See* Doc. 1, pp. 8, 11-14).[5]

In Count Two of the indictment, petitioner was charged with possessing heroin "in an amount that equaled or exceeded 2500 unit doses." (*See* Doc. 11, Ex. 1). The bill of particulars produced by the State further provided the following factual allegations in support of the indictment's charges: "on November 17, 2005 ..., 659 bindles of heroin weighing 10.38 grams" were discovered in petitioner's automobile, and upon execution of a search warrant, "61 bundles of heroin containing 50 bindles each (total of 3050 bindles), which weighed 99.62 grams," were discovered in petitioner's residence. (*See id.*, Ex. 2). In addition, in accordance with this Court's Order of October 27, 2009, respondent submitted a report dated December 8, 2005 prepared by the Hamilton County Coroner's Crime Laboratory. (Doc. 14). It appears that the document was generated to report results of testing conducted on the substance found in petitioner's residence, which was identified as heroin weighing 99.62 grams. (*See id.*). Although the number of unit doses was not specified, the report did provide that the "tan powder which was weighed and analyzed ... was packaged in 2550 glassine bags each labeled 'YOUNG JEEZY' that were selected from 3050 glassine bags that were all contained in two plastic bags." (*Id.*).

[5] Petitioner premises his argument challenging the validity of Count Two solely on the amount of heroin found in his residence, whereas his challenge to Count One is based solely on the amount of heroin found in his automobile. (*See* Doc. 1, pp. 10-12). Under this theory, the two counts are separate and distinct because petitioner would have been charged in Count One with possession of the heroin discovered in his car and in Count Two with possession of the additional heroin later found in his residence upon execution of the search warrant. However, in a supplemental return of writ filed on November 30, 2009 in response to this Court's Order of November 23, 2009, respondent has made it clear that the factual basis for both Counts One and Two is the same. (*See* Doc. 17, p. 3). Respondent states that "the only difference between counts one and two is that count one alleges possession of an amount of heroin by weight and count two alleges possession of heroin by unit doses." (*Id.*). Therefore, it appears that petitioner has wrongly assumed that the facts underlying the two criminal charges are different. Instead, it appears that the counts are both based on the combined amount of heroin found in petitioner's residence and motor vehicle.

Under Ohio Rev. Code § 2925.11(C)(6)(f), a person is guilty of a first-degree-felony heroin possession offense and will be deemed a major drug offender "[i]f the amount of the drug involved equals or exceeds two thousand five hundred unit doses *or* equals or exceeds two hundred fifty grams." (Emphasis added). It is petitioner's position that because the heroin found in his possession did not satisfy the 250-gram minimum limit set forth in § 2925.11(C)(6)(f), he could not be charged with or convicted of a major-drug-offender offense.

However, the charge set forth in Count Two was not based on the weight of the heroin, but rather on evidence that over 2500 unit doses of heroin were found in petitioner's possession. At the plea hearing, petitioner's counsel stipulated to the facts relayed by the prosecutor to the effect that the substance discovered in petitioner's automobile "tested positive ... as being heroin in the amount of 95 unit doses;" that "over 3000 unit doses of heroin" were found in petitioner's residence; and that "the coroner's lab tested all of those and tested the heroin as being heroin and tested in excess of 2500 unit doses, specifically 2,515 unit doses to make it in excess of the 2500 required by the major drug offender." (*See* Doc. 11, Ex. 16, November 6 Plea Hearing Tr. 2-5). Moreover, upon review of the plea transcript, it appears clear that petitioner knowingly and voluntarily entered the no contest plea with the understanding that he was "admit[ting] that the facts described in the indictment are true." (*See id.*, Tr. 9-11).

It is conceded that the crime laboratory report submitted by respondent neither specifies the number of unit doses found at petitioner's residence nor reflects the ultimate determination reported by the prosecutor that the testing conducted by the coroner's lab revealed that petitioner possessed 2515 unit doses of heroin. However, by the same token, the information contained in the report corroborates certain facts set forth in the bill of particulars and the prosecutor's statement of facts at the plea hearing. Indeed, given that the amount of heroin tested was "packaged in 2550 glassine bags each labeled 'YOUNG JEEZY,'" which were selected from a total of 3050 glassine bags found at petitioner's residence, the report reflects that the amount discovered in petitioner's possession was significant. The report, therefore, does not refute and, if anything, supports the grand jury's finding of probable cause for the criminal charge set forth in Count Two of the indictment and attached MDO specification, as well as petitioner's conviction as a major drug offender on that charge.

Petitioner has neither cited nor presented any evidence to negate the stipulated statement of facts given at his plea hearing, wherein he knowingly and

voluntarily admitted the facts described in Count Two of the indictment – *i.e.*, that he possessed in excess of 2500 unit doses of heroin. Upon review of the present record, it thus appears that, contrary to petitioner's contention, there was a factual basis for charging petitioner as a major drug offender based on the amount of unit doses of heroin found in his possession. Accordingly, the undersigned concludes that petitioner's appellate counsel did not act unreasonably in failing to find that an arguable issue could be raised on direct appeal challenging the validity of the charge contained in Count Two of the indictment and attached MDO specification, as well as trial counsel's corresponding failure to object to that charge.

The second act or omission identified by petitioner as constituting ineffective assistance by his appellate counsel stemmed from counsel's failure to assert an assignment of error challenging the validity of the charge contained in Count One of the indictment and trial counsel's corresponding failure to object to that charge.

In Count One, petitioner was charged with possessing heroin "in an amount that equaled or exceeded 50 grams but less than 250 grams," which is a first-degree felony under Ohio Rev. Code § 2925.11(C)(6)(e).[6] Petitioner contends that an objection should have been raised to this count because "the records and transcripts clearly demonstrate[] that ... [he] was arrested with 10.38 grams of heroin," which would only support a charge of a "felony of the second degree." (*See* Doc. 1, pp. 7-8, 10-11, 13-14).

As noted above, *see supra* p. 11 n.5, petitioner's argument is based on the assumption that petitioner was only charged in Count One with possessing the amount of heroin discovered in his automobile on his arrest. Because the record initially submitted by respondent was unclear on this point, the undersigned issued an order on October 27, 2009 stating that it appeared "at least initially ... that the charge set forth in Count One stems from the heroin that was discovered in petitioner's motor vehicle, whereas the heroin that was obtained later during the search of petitioner's residence forms the basis of the separate possession charge

---

[6] Ohio Rev. Code § 2925.11(C)(6)(e) provides that a person is guilty of a first-degree-felony drug possession offense in violation of Ohio Rev. Code § 2925.11(A) "[i]f the amount of the drug involved equals or exceeds five hundred unit doses but is less than two thousand five hundred unit doses *or equals or exceeds fifty grams but is less than two hundred fifty grams*." (Emphasis added).

contained in Count Two." (Doc. 13, pp. 3-4).[7] Although it appeared clear from the record at that juncture that there was a sufficient factual basis for petitioner's plea of no contest to Count Two of the indictment, respondent was ordered to submit additional information, "which perhaps can be found in the Hamilton County Coroner's Lab report or the prosecutor's files," which "would be useful to the Court in adjudicating the merits of petitioner's third ground for relief as it pertains to the factual basis underlying petitioner's plea of no contest to the first-degree-felony possession charge set forth in Count One of the indictment." (*Id.,* pp. 4-5).

---

[7] In so concluding, the undersigned noted that although respondent had suggested in the return of writ that the two charges were based on the combined amount of heroin found in petitioner's car and residence, "[s]uch a reading of the indictment ... gives rise to double jeopardy concerns to the extent that it could be argued that petitioner then would have been convicted and punished [twice] for the same offense." (Doc. 13, p. 4 n.2). As noted above, *see supra* p. 11 n.5, respondent has since made it clear in a subsequent pleading that the same amount of heroin formed the basis for both charges. (*See* Doc. 17, p. 3). Because the trial court did not merge the two counts for sentencing purposes as allied offenses of similar import under Ohio's multiple-count statute, Ohio Rev. Code § 2941.25, it appears that a non-frivolous claim could have been raised on direct appeal that petitioner was multiply punished for the same offense in violation of the Double Jeopardy Clause. *See, e.g., Jones v. Thomas,* 491 U.S. 376, 381 (1989); *Ohio v. Johnson,* 467 U.S. 493, 499 (1984); *Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (citing *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969)); *Brown v. Ohio,* 432 U.S. 161, 165 (1977); *see also State v. McIntosh,* 763 N.E.2d 704, 710-11 (Ohio Ct. App. 1 Dist. 2001) (holding that two possession counts involved allied offenses of similar import where the State did "not challenge the fact that the marijuana for each of these counts was the same"), *appeal dismissed,* 759 N.E.2d 787 (Ohio 2001) & 774 N.E.2d 763 (Ohio 2002). However, petitioner neither presented a double jeopardy claim as a *pro se* assignment of error on direct appeal nor argued on further appeal to the Supreme Court of Ohio that his appellate counsel was ineffective in failing to object to his conviction, sentence or trial counsel's performance on double jeopardy grounds. Petitioner also has not asserted or attempted to add such a claim as a ground for relief in the instant petition. (*See* Doc. 1; Doc. 11, Exs. 5, 8, 12). It thus appears that any such claim raised at this juncture would be subject to dismissal because it is procedurally defaulted, or possibly even time-barred under 28 U.S.C. § 2244(d)(1). *Cf. Grubbs v. Singletary,* 120 F.3d 1174, 1177-78 (11th Cir. 1997) (holding that although petitioner's claim challenging his appellate counsel's performance in crafting an *Anders* brief was fairly presented to the state courts, petitioner had procedurally defaulted a corollary claim challenging the state court of appeals' non-compliance with the procedural requirements of *Anders* "since he did not raise it in the state courts and would be procedurally barred from doing so in a second or successive motion or petition"), *cert. denied,* 523 U.S. 1060 (1998); *see also Strickland,* 466 U.S. at 690.

Thereafter, respondent submitted the crime laboratory report dated December 8, 2005, which apparently pertained to the testing conducted on the heroin found in petitioner's residence. As discussed above in addressing petitioner's claim challenging his conviction as a major drug offender on Count Two of the indictment, the report corroborates certain facts set forth in the bill of particulars and the prosecutor's statement of facts at the plea hearing regarding the factual basis for the charge contained in Count Two. (Doc. 14). Because the report did not appear to provide any additional information that would be helpful to the Court in determining the factual basis for the separate charge contained in Count One, the undersigned issued a second order on November 23, 2009 requiring respondent to file a supplemental return of writ responding to the Court's specific concerns together with "any additional document(s) ... which would support the State's position that there is a sufficient factual basis to support both of the first-degree-felony possession charges contained in the indictment." (Doc. 16, p. 3).

Respondent filed a supplemental return of writ on November 30, 2009 responding as ordered to this Court's specific concerns. In the supplemental return of writ, respondent has made it clear that the "amount of controlled substance found pursuant to a search of [petitioner's] house is the factual basis for both counts one and two." (Doc. 17, p. 3). Respondent further avers: "The only difference between counts one and two is that count one alleges possession of an amount of heroin by weight and count two alleges possession of heroin by unit doses." (*Id.*).

Upon review of the record, as clarified by respondent in the supplemental return of writ, the undersigned concludes that, contrary to petitioner's contention, there was a factual basis for charging petitioner with a first-degree-felony offense based on the weight of the heroin found in his possession. The "Official Crime Laboratory Report" submitted by respondent in response to this Court's October 27, 2009 Order conclusively establishes that the substance subjected to testing, which apparently was obtained during the search of petitioner's residence, was heroin weighing 99.62 grams.[8] (Doc. 14). The bill of particulars reported that finding and further provided that an additional 10.38 grams was discovered earlier in petitioner's automobile. At the plea hearing, the prosecutor gave a statement of

[8] The report suggests that more heroin was discovered in petitioner's residence which was not subjected to testing. (*See* Doc. 14). Therefore, it is likely that the total amount of heroin from petitioner's residence weighed more than 99.62 grams.

facts regarding the number of unit doses of heroin found in petitioner's possession, which provides support for the major drug offender charge contained in Count Two; at that point in his recitation of the facts, the prosecutor was interrupted by defense counsel, who stipulated "to those facts," and "waive[d] further reading." (*See* Doc. 11, Ex. 16, November 6 Plea Hearing Tr. 2-5). No further statement was given regarding the weight of the heroin found in petitioner's possession. Nevertheless, it is clear from the bill of particulars and the crime laboratory report that the evidence supported the alternative first-degree-felony charge in Count One based on the weight of the heroin discovered on his arrest and search of his residence.

It is permissible under Ohio's multi-count statute, Ohio Rev. Code § 2941.25(A), for an indictment to contain more than one count even when the conduct charged in the additional counts involve the same parties and the same type and quantity of drugs, and thus "can be construed to constitute two or more allied offenses of similar import." *State v. Roberts,* 405 N.E.2d 247, 251 (Ohio), *cert. denied*, 449 U.S. 879 (1980); *see also State v. Baer*, 423 N.E.2d 432, 434 (Ohio 1981) ("Under the provisions of R.C. 2941.25(A) or (B), no error arises as a result of the multiple charges contained in separate counts of the indictment," even when the counts are based on the same conduct). Therefore, there does not appear to have been any defect in the indictment that could have been challenged by petitioner's trial counsel or appellate attorney as argued by petitioner.

As noted above, *see supra* p. 14 n.7, petitioner has never contended either to the state courts or in the instant petition that his counsel should have objected to his conviction and sentence on double jeopardy grounds because the two charges, properly brought in the indictment, should have been merged for sentencing purposes as allied offenses of similar import under Ohio Rev. Code § 2941.25.[9]

---

[9] *Cf. Roberts,* 405 N.E.2d at 251 ("R.C. 2941.25(A) requires us to conclude that where a defendant is charged with the possession for sale of a narcotic drug in violation of R.C. 3719.20(A), and with the sale of a narcotic drug in violation of R.C. 3719.20(B), and the facts demonstrate that both charges are based upon a single sale and involve the same parties and the same type and quantity of drugs, and it is not proven that the defendant possessed a quantity of any type of narcotic drug in excess of the amount sold, the defendant may be indicted for both offenses but may be convicted of only one"); *see also McIntosh,* 763 N.E.2d at 710-11 ("While appellant could have been found guilty of both possession counts [involving the same marijuana], the trial court should have sentenced him for but one"); *State v. Shaw,* No. 07CA3190, 2008 WL 4899277, at *6 (Ohio Ct. App. 4 Dist. Nov. 4, 2008) (unpublished) (holding that "the trial court committed plain error in entering convictions [for allied drug trafficking and possession offenses], notwithstanding the fact that the trial court imposed concurrent sentences for the two offenses").

Instead, he has alleged only that his appellate counsel was ineffective in failing to challenge the validity of Count One as set forth in the indictment.

Petitioner has neither cited nor presented any evidence to negate the fact that he possessed heroin weighing over 50 grams but less than 250 grams. Indeed, before the trial court accepted petitioner's no contest plea at the plea hearing, petitioner knowingly and voluntarily admitted that the facts described in Count One of the indictment were "true"–i.e., that he possessed heroin "in an amount that equaled or exceeded 50 grams but let than 250 grams." (*See* Doc. 11, Ex. 16, November 6 Plea Hearing Tr. 9-11). Upon review of the record, as clarified by respondent, it thus appears clear that, contrary to petitioner's contention, there was a factual basis for charging petitioner in Count One with a first-degree-felony offense based on the weight of the heroin found in his possession. Petitioner's appellate counsel, therefore, did not act unreasonably in failing to find that an arguable issue could be raised on direct appeal challenging the validity of the charge contained in Count One of the indictment, as well as trial counsel's corresponding failure to object to that charge.

Accordingly, in sum, the undersigned concludes that petitioner has not demonstrated that the allegedly unreasonable acts or omissions of his appellate counsel, specifically asserted by him as grounds for relief in the state court appeal proceedings and the instant petition, satisfy the first prong of the *Strickland* test. Petitioner, therefore, is not entitled to federal habeas corpus relief based on such claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the ineffective assistance of appellate counsel claims specifically alleged by petitioner as grounds for relief in the petition, because petitioner has failed to make a substantial showing of the denial of a constitutional right in those grounds. *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis* at the close of this case, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

**IT IS SO RECOMMENDED.**

Date: 4/12/10

/s/ Timothy S. Black
United States Magistrate Judge

J:\08-599habeas.wpd

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

---

Tywand Smith,
Petitioner

vs

Case No. 1:08cv599
(Dlott, J.; Black, M.J.)

Warden, London Correctional Institution,
Respondent

# NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **within 14 days** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **within 14 days** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).